UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHASE F. MAUNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17 CV 1479 ACL |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Chase F. Maune brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Maune's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Maune filed his application for DIB on January 13, 2014, claiming that he became unable to work on August 31, 2011, because of aortic dissection and stomach aneurysm. (Tr. 195, 221.)

Maune was 39 years of age at the time of his alleged onset of disability. His claims were denied initially. (Tr. 114.) Following an administrative hearing, Maune's claims were denied in a written opinion by an ALJ, dated February 5, 2016. (Tr. 20-29.) Maune then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on April 10, 2017. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In his sole claim in this action, Maune argues that the ALJ "failed to properly consider step 2 of the sequential evaluation." (Doc. 12 at 3.)

## II. The ALJ's Determination

The ALJ first found that Maune met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 22.) He found that Maune did not engage in substantial gainful activity since his alleged onset date of August 31, 2011. *Id.*

In addition, the ALJ concluded that Maune had the following severe impairments: aortic dissection, obesity, and obstructive sleep apnea.[1] *Id.* The ALJ found that Maune did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 23.)

As to Maune's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that due to the combination of his impairments, the claimant could occasionally climb ramps and stairs. He should never climb ladders, ropes or scaffolds. He could occasionally balance and stoop, but he should never kneel, crouch, or crawl. The claimant

---

[1] Maune does not challenge the ALJ's findings with regard to these impairments. As such, the undersigned will not discuss these impairments.

> could frequently reach in all directions and overhead with his
> bilateral upper extremities. He could frequently handle, finger, and
> feel with his bilateral upper extremities. The claimant is restricted
> to occasional exposure to temperature extremes. He should avoid
> all exposure to operational control of moving machinery, hazardous
> machinery and unprotected heights.

*Id.*

The ALJ found that Maune's allegations regarding the extent of his limitations were not entirely credible. (Tr. 25.) In determining Maune's RFC, the ALJ considered the opinions of state agency medical consultants, treating physician Dr. Alan Braverman, medical experts who testified at the hearing, and consultative physicians. (Tr. 27.)

The ALJ further found that Maune was not capable of performing past relevant work, but was capable of performing other work, such as telephone order clerk, production worker/assembler, and product inspector. (Tr. 27-28.) The ALJ therefore concluded that Maune was not under a disability, as defined in the Social Security Act, from August 31, 2011, through the date of the decision. (Tr. 29.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits filed on January 13, 2014, the claimant is not
> disabled under sections 216(i) and 223(d) of the Social Security Act.

(Tr. 29.)

### III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of

the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of

production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

Maune's sole argument is that the ALJ erred in finding his tremor disorder was non-severe. He contends that the ALJ's failure to properly find this impairment severe at step 2 "necessarily influenced his analysis at subsequent steps because the effects of tremors were essentially removed from further consideration." (Doc. 12 at 12.) Maune claims that his tremor disorder limits him to occasional fine-finger manipulation, which means it has more than a minimal effect on his ability to perform basic work activities.

"It is the claimant's burden to establish that his impairment or combination of impairments is severe." *Kirby*, 500 F.3d at 707. To be considered severe, an impairment must "significantly limit[ ] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). *See also* Social Security Ruling (SSR) 96–3p, 1996 WL 374181, at *1 (July 2, 1996). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707. The Eighth Circuit has noted that "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and [the Eighth Circuit] ha[s] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* at 708.

Here, the ALJ considered whether Maune's right hand tremor was severe, but found that it did not cause more than minimal vocationally-relevant limitations. (Tr. 23.) The ALJ cited portions of the medical record in support of this finding. *Id.* First, he referred to the records of Paul L'Ecuyer dated April 11, 2013. (Tr. 368-371.) Maune complained of tremor in his hands

since his recent hospitalization, the right hand more than the left. *Id.* He indicated that the tremor occurred both with rest and with activity, and that he was having difficulties with fine motor tasks around the house. *Id.* Dr. L'Ecuyer referred Maune to neurologist James Goldring, M.D. (Tr. 371.)

The ALJ next cited the treatment notes of Dr. Goldring. (Tr. 398-400.) In a letter to Dr. L'Ecuyer dated May 1, 2013, Dr. Goldring stated that Maune reported experiencing "shaky hands" for several years, the right side more than the left. (Tr. 400.) Maune indicated that he taught himself to write with his non-dominant left hand, and used his left hand to get food to his mouth. *Id.* Upon examination, Maune had a "flexion/extension tremor noted with postural maintenance as well as a terminal tremor with finger-to-nose testing." *Id.* He had no tremor at rest. *Id.* A handwriting sample using his left hand demonstrated a "clear-cut tremor." *Id.* Dr. Goldring stated that Maune had a "fairly severe essential tremor and/or task-specific tremor affecting his handwriting in particular." *Id.* He started Maune on a trial of Primidone.[2] *Id.* Maune saw Dr. Goldring for follow-up on July 1, 2013, at which time Maune reported overall improvement in his tremor since starting Primidone. (Tr. 399.) Maune indicated that his handwriting had improved, and that he was occasionally able to use his right hand, which he had not been able to do in "quite some time." *Id.* On examination, he had no tremor at rest; a mild flexion/extension tremor in the upper extremities with postural maintenance; and a mild terminal tremor with finger-to-nose testing. *Id.* Dr. Goldring found that Maune was "doing well." *Id.* Maune requested an increase in his dosage of Primidone, and Dr. Goldring indicated that he would increase the dosage up to 100 mg over the next few weeks. *Id.* On January 17, 2014, Dr. Goldring stated that Maune had noticed improvement in his tremor symptoms after his dosage was increased to 100 mg. (Tr.

---

[2]Primidone is an anticonvulsant drug indicated for the treatment of seizure disorders and essential tremor. *See* WebMD, http://www.webmd.com/drugs (last visited June 27, 2018).

398.) Maune reported that he was applying for disability benefits due to his cardiovascular issues. *Id.* On examination, Dr. Goldring noted a flexion/extension tremor with postural maintenance, a terminal tremor with finger-to-nose testing, no tremor at rest, and normal muscle tone. *Id.* Maune's fine finger movements were performed well. *Id.* Dr. Goldring stated that Maune has an essential tremor that has improved with Primidone. *Id.* He noted that, because Maune reported that the tremor was still bothering him, he would increase his dosage up to 150 milligrams. *Id.*

The record contains substantial evidence supporting the ALJ's determination that Maune's tremor was not severe. The evidence cited by the ALJ and discussed above reveals that Maune's tremor improved with Primidone. Maune's improvement on medication is significant, because an impairment that is amenable to treatment cannot be disabling. *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (impairments that are controllable or amenable to treatment do not support a finding of total disability).

Even if the ALJ erred in finding Maune's tremor non-severe at step 2, this error was harmless. Courts frequently find that an ALJ's exclusion of a particular impairment as severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis. *See Hankinson v. Colvin*, No. 4:11-CV-2183-SPM, 2013 WL 1294585, at *12 (E.D. Mo. Mar. 28, 2013) ("[F]ailing to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis."); *Givans v. Astrue*, No. 4:10-CV-417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when

determining the RFC); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,'…when we assess your residual functional capacity.").

Here, after finding Maune's tremor non-severe at step 2, the ALJ proceeded to discuss the effects of Maune's tremor on his RFC. The ALJ found that Maune was restricted to frequent handling, fingering, and feeling with his bilateral upper extremities. (Tr. 23.) As such, Maune's argument that the ALJ did not consider the effects of his tremor disorder after step 2 is misplaced.

Maune also argues that his tremor disorder limits him to occasional, rather than frequent, fine-finger manipulation. He contends that he qualifies for disability benefits, as the vocational expert testified that such a limitation would preclude all employment. (Tr. 78.) In support, Maune cites the following medical evidence: Dr. Goldring's treatment notes; the report of consultative psychologist Kimberly Buffkins, PsyD.; and the opinion of consultative internist Veronica Weston, M.D.

With regard to Dr. Goldring, Maune argues that the ALJ ignored all of Dr. Goldring's findings when assessing the severity of Maune's tremor. As previously discussed, however, the ALJ specifically cited Dr. Goldring's records dated May 2013 through January 2014 in support of his step 2 finding that the tremor was non-severe. (Tr. 23.) The only records of Dr. Goldring not mentioned by the ALJ is a recent treatment note from April 20, 2015, in which Dr. Goldring indicated that Maune had not improved any further since his dosage of Primidone had been increased to 250 mg. (Tr. 473.) Maune was still unable to write with his right hand. *Id.* Dr. Goldring found that Maune's essential tremor was "partially controlled." *Id.* He considered adding additional medication but indicated that he would consult with Maune's other physicians

first. *Id.* This evidence is consistent with the other treatment notes of Dr. Goldring considered by the ALJ, which showed improvement of the tremor with medication. The fact that Maune's tremor was not completely controlled is not inconsistent with the ALJ's determination.

Maune saw consultative psychologist Dr. Buffkins for a psychological evaluation at the request of the state agency on August 26, 2015. (Tr. 529-33.) He complained of transient depression. (Tr. 529.) As to his medical history, Maune reported having hand tremors for over two years. (Tr. 530.) On mental status examination, Dr. Buffkins noted that a slight hand tremor was observed during the testing. (Tr. 531.) She stated that, despite being naturally right-handed, Maune used his left hand during the testing, which negatively impacted his speed and overall performance. *Id.* For example, his ability to process simple or routine visual material without making errors was in the "Extremely Low" range when compared to his peers; and his IQ score in the low average range was an underestimate of his true intellectual functioning due to his use of his left hand. (Tr. 532.) Dr. Buffkins concluded that Maune's prognosis was good, and recommended services such as vocational rehabilitation to address his unemployment. (Tr. 533.)

On the same date, Dr. Weston performed a consultative physical examination at the request of the state agency. (Tr. 541-44.) Dr. Weston noted Maune's history of tremor with fine motor skills, but did not visualize this on examination. (Tr. 543.) She completed a Medical Source Statement of Ability to do Work-Related Activities (Physical), in which she expressed the opinion that Maune was limited to occasional reaching, handling, fingering, feeling, and pushing/pulling as a result of "history of essential tremor on Primidone 150 mg twice daily." (Tr. 550.)

The ALJ discussed the opinions of Drs. Buffkins and Weston. (Tr. 27.) He indicated that he was assigning "little weight" to Dr. Weston's opinion as she only examined Maune on one occasion and did not have the ability to view any of the medical evidence of record. *Id.* The ALJ

stated that there was "no objective evidence to support any bilateral manipulative activity, which would reduce to occasional." *Id.* The ALJ indicated that he was assigning "great weight" to the opinion of the impartial medical expert, Dr. Lee Fischer, because he reviewed the entire medical record and his opinion was consistent with the totality of the evidence of record. *Id.*

When asked by the ALJ if he identified any severe physical impairments, Dr. Fischer responded in the affirmative. (Tr. 73.) He then stated that Maune "has an abdominal aortic aneurysm dissection. He has morbid obesity, sleep apnea, hypertension, benign essential tremor, and venous stasis in his lower extremities." *Id.* Dr. Fischer testified that the hypertension and venous stasis were "probably not severe," but the aortic dissection, obesity, and sleep apnea were severe. (Tr. 73-74.) Dr. Fischer testified that Maune was restricted to sedentary physical exertional work with additional non-exertional limitations, including a manipulative limitation of "frequently, as opposed to constantly." (Tr. 74.)

Later in the hearing, the ALJ noted that Dr. Weston found Maune was limited to occasional bilateral manipulative functions and asked Dr. Fischer to explain the difference in opinion. (Tr. 77.) Dr. Fischer testified that Dr. Weston's opinion appeared to be based on Maune's history of tremor, rather than an observation of the tremor on examination or medical records supporting the limitation. *Id.*

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart*, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

Maune first argues that it is unclear whether Dr. Fischer found Maune's tremor to be a

severe impairment and therefore equally unclear whether he included its effects in his opinion. The issue of whether Dr. Fischer believed Maune's tremor was severe, however, is immaterial. Dr. Fischer considered the tremor as a medically determinable impairment and limited Maune to frequent rather than constant bilateral manipulative functions to address this impairment. (Tr. 74.) As previously discussed, any error at step 2 was harmless in this case because the ALJ considered the tremor later in the sequential evaluation.

Maune also argues that, based upon the discrepancy between the opinions of Drs. Fischer and Weston, the ALJ should have further developed the record by asking Dr. Weston to clarify her opinion. "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). "While '[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped,' 'the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.'" *Martise*, 641 F.3d at 926-27 (quoting *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010)) (alteration in original). "[T]he burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016. And, "[w]hile an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

The record in this case was not underdeveloped. The ALJ ordered a physical and mental consultative examination. He obtained the testimony of a medical expert at the hearing. The ALJ's determination that Maune's tremor limited him to frequent manipulative activities is supported by the opinion of the medical expert. The ALJ also cited the medical treatment notes of

examining physicians in making this determination.   The ALJ had ample evidence with which to make a determination.   He did not err in failing to further develop the record.

Maune finally argues that Dr. Buffkins' findings on examination "proved that the tremor interfered with Plaintiff's ability to perform fine-finger manipulation."   (Doc. 12 at 7.)   Dr. Buffkins performed a psychological examination at the request of the state agency to assess Maune's complaints of depression.   It is true that Dr. Buffkins observed "a slight hand tremor" during the testing, which caused Maune to use his left, non-dominant hand during testing.   (Tr. 531.)   Dr. Buffkins found that Maune's use of his non-dominant hand during testing negatively impacted his speed and overall performance.   This evidence is not, however, inconsistent with the ALJ's findings.   The ALJ's failure to discuss the evidence of the consultative psychologist when discussing Maune's limitations resulting from his tremor was not error.

In sum, the ALJ properly weighed the medical opinion evidence.   His finding that Maune is limited to frequent bilateral manipulation is supported by substantial evidence, including the opinion of the medical expert.

An ALJ's decision is not to be disturbed "'so long as the...decision falls within the available zone of choice.   An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'" *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).   The ALJ properly weighed the medical opinion evidence in determining the severity and resulting limitations of Maune's tremor.   Although Maune articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above.   *See Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (concluding that "[w]hile it

was not surprising that in an administrative record which exceeds 1,500 pages, [claimant] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination).

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of September, 2018.